IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOSEPH C. SUN,

                         **Plaintiffs,**

    **v.**

STEVEN GIRARDOT, MARY
GIRARDOT, SEAN
MCILHINNEY and COSTA
LANIER HOMEOWNERS
ASSOCIATION,

                      **Defendants.**

No.  1:04-cv-0542-WSD

## OPINION AND ORDER

This matter is before the Court on Defendants Steven Girardot, Mary

Girardot, Costa Lanier Homeowners Association, and Sean McIlhinney's

("Defendants") Motion for Summary Judgment and Brief in Support thereof ("Def.

MSJ") [88] and Plaintiff Joseph Sun's ("Plaintiff") Motion for Summary Judgment

and Brief in Support thereof ("Pl.  MSJ") [91].

## I.  PROCEDURAL BACKGROUND

Plaintiff filed this action on February 25, 2004, asserting one count against

Defendants for denial of due process under 42 U.S.C. § 1983 and one count for

violation of both federal and state versions of the Racketeer Influenced and Corrupt

Organization Act ("RICO").  (Compl. [1].)  On July 27, 2004, Defendants filed a

Motion to Dismiss all of Plaintiff's claims.  (Motion to Dismiss [10].)  On February

10, 2005, the Court held that Plaintiff had sufficiently, albeit barely, alleged a factual

basis for his claims and denied Defendants' motion.  (Order of February 10, 2005

[35], at 15, 18.)  On February 28, 2005, as allowed by the Court's February Order,

Plaintiff added Mark Baker and Sean McIlhinney as defendants.  (Am. Compl.

[41].)  On March 17, 2005, Defendant Mark Baker filed his Motion to Dismiss, and

it was granted by the Court on September 16, 2005.  (Order of September 16, 2005

[65].)  Discovery ended in this case on March 15, 2006.  (Order re: Proposed

Discovery Plan [77].)  On April 15, 2006, Defendants filed their Motion for

Summary Judgment.  (Def.  MSJ [88].)  On April 17, 2006, Plaintiff filed his

Motion for Summary Judgment.  (Pl. MSJ [91].)[1]

---

[1]  Defendants also filed a motion asking this Court to permit them to file their
Motion for Summary Judgment late due to electronic filing difficulties experienced
by Defendants' attorney. ("Mot. for Consideration of Untimely Filed MSJ [90].)
Plaintiff also sought permission from the Court to file his Statement of Material
Facts late because he was unaware of the requirement at the time he filed his
Motion for Summary Judgment.  (Mot. to File Belated Statement of Material Facts

II.   **FACTS**

Plaintiff was employed by Sun-Pacific Enterprises, Inc. ("Sun-Pacific"), the developer of the Costa Lanier subdivision in Lake Lanier, Georgia.  (Pl. Statement of Material Facts ("Pl. SMF") [97], at ¶ 2.)  Defendant Costa Lanier Homeowners Association ("the Homeowners Association") is an association of homeowners in the Costa Lanier subdivision.  In 1996, Defendants Steven and Mary Girardot (the "Girardots") purchased from Sun-Pacific two lots in the Costa Lanier subdivision. (Def. Statement of Material Facts ("Def. SMF"), attached to Def. MSJ [88] as Ex.3, at ¶ 1.)  In 1998, the Girardots filed a lawsuit against Sun-Pacific in Newton County Superior Court (the "Newton County Action").  (Id. at ¶ 6.)  In that litigation, the Girardots sought to prevent Sun-Pacific's sale of a lot adjacent to the lots owned by the Girardots (the "Adjacent Lot"). The Girardots alleged in the lawsuit that Plaintiff represented to them during and after the purchase of their two lots that the Adjacent Lot would not be transferred to any person or entity other than the Homeowners Association.  (Pl. SMF, at ¶ 3.)  The case was presided over by Newton County Superior Court Judge John Ott; former defendant Mark Baker

_____

[97].)  Because neither motion is opposed, both motions are **GRANTED**.

represented the Girardots, and attorney Macklyn Smith represented Sun-Pacific. (Def. SMF, at ¶ 7.)  The Girardots ultimately prevailed at trial, and in September 2000, the court entered a permanent injunction prohibiting Sun-Pacific from selling or transferring the Adjacent Lot to any person or entity except the Homeowners Association.  (Pl. SMF, at ¶ 1.)  In December 2000, the court denied Sun-Pacific's motions for a directed verdict and awarded the Girardots their attorneys' fees and costs.  (Def. SMF, at ¶¶ 8, 10.)  The Georgia Court of Appeals affirmed the trial court's verdict and award of fees and costs.  (Id. at ¶ 10.)

In or about November 2002, the Girardots, represented by Defendant Sean McIlhinney, moved the Newton County Superior Court for a contempt order against Sun-Pacific and Plaintiff, alleging they violated the September 2000 permanent injunction by transferring ownership of the Adjacent Lot to Plaintiff. (Id. at ¶ 13.)  Mr. McIlhinney served the Motion for contempt on Sun-Pacific's attorney, Macklyn Smith, who was representing Sun-Pacific in another case against the Girardots at the time.  (Id. at ¶ 14.)  On September 17, 2002, Macklyn Smith sent a letter to Mr. McIlhinney informing him that he was not representing Plaintiff, but he would notify Plaintiff of the Rule Nisi hearing which was then scheduled for October 7, 2002.  (Id. at ¶ 15.)  On or about October 2, 2002, Mr. McIlhinney sent

4

the Rule Nisi notice and Motion for Contempt to Sun-Pacific's appellate counsel, David Flint.  (<u>Id.</u> at ¶ 16.)  Subsequently, an attorney from Mr. Flint's law firm contacted Mr. McIlhinney by voicemail and letter and told him he no longer represented Sun-Pacific.  (<u>Id.</u>)

On October 3, 2002, Mr. McIlhinney sent Judge Ott a facsimile letter, which copied Plaintiff, Mr. Flint and Mr. Smith, expressing his concern that Plaintiff may claim not to have received the notice of the Rule Nisi hearing on the Motion for Contempt.  (<u>Id.</u> at ¶ 17.)  Mr. McIlhinney requested and was granted a continuance in order to mail a copy of the notice to Plaintiff via certified and regular mail.  (<u>Id.</u> at ¶¶ 18-19.)  On October 15, 2002, Mr. McIlhinney sent notice to Plaintiff at the two addresses Mr. McIlhinney was aware of for Plaintiff.  (<u>Id.</u> at ¶ 21-22.)

On November 13, 2002, Mr. McIlhinney appeared before Judge Ott for the Rule Nisi hearing.  Judge Ott reviewed the Rule Nisi notice and again continued the case, finding the notice deficient in neglecting to inform Plaintiff that Defendant was requesting his incarceration and that he could be incarcerated for failing to appear, and because there was no record of the delivery status of the certified mailings sent to Plaintiff.  (<u>Id.</u> at ¶ 23.)  The hearing was continued to December 9, 2002.  (<u>Id.</u>)  On November 21, 2002, Mr. McIlhinney sent a revised Motion for Contempt and

Rule Nisi notice to Plaintiff by regular and certified mail to the two addresses he had for Plaintiff.  (Id. at 27.)  Both the first and second notices sent to Plaintiff via certified mail were returned to Mr. McIlhinney as unclaimed.  (Id. at ¶¶ 29, 31.)  The two notices sent via regular mail were not returned to sender by the United States Post Office.  (Id. at ¶¶ 30, 32.)

On December 9, 2002, the Rule Nisi hearing on the Motion for Contempt was held.  (Id. at ¶ 33.)  Plaintiff again was not present for the hearing.  (Pl. SMF, at ¶ 9.)  Judge Ott ruled that Plaintiff and other interested parties had been properly notified of the hearing.  (Def. SMF, at ¶ 33.)  On January 7, 2003, the court entered an order voiding the alleged fraudulent transfer of the Adjacent Lot, holding Plaintiff to be in contempt of court, and ordered that Plaintiff be incarcerated immediately for knowingly, intentionally and willfully violating the September 2000 injunction (the "Contempt Order").  (Pl. SMF, at ¶ 9; Def. SMF, at ¶ 34.)  Pursuant to the order, the Lots were conveyed back to Sun-Pacific.  (Pl. SMF, at ¶ 9.)

Plaintiff alleges Defendants conspired with Judge Ott to ensure Plaintiff would not receive notice of the hearing by mailing the notice to an address they knew to be incorrect.  Plaintiff further alleges Judge Ott and Defendants prevented him from challenging the Contempt Order by intentionally failing to serve him with a

6

copy of the order.  Plaintiff states he did not receive notice of the Contempt Order until October 2003, when a copy of it was attached to a motion in a federal bankruptcy proceeding involving the parties.  Defendants, on the other hand, argue that Plaintiff bases his conclusory allegations solely on perceived incorrect or unfavorable rulings by Judge Ott, and that Plaintiff has shown no evidence to support his alleged due process and RICO violations.

**IV.    DISCUSSION**

    A.  <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not

present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.  Defendants' Motion for Summary Judgment

1.    Plaintiff's Claim under 42 U.S.C. § 1983

Plaintiff alleges Defendants violated his constitutional right to procedural due process by conspiring with a judicial officer to deprive him of notice of the December 2002 hearing, resulting in the state court entering the Contempt Order

based on false information provided by Defendants and their agents.[2]  Defendants

argue their motion for summary judgment on Plaintiff's § 1983 claims should be

granted because Plaintiff has not produced any evidence of a conspiracy between

Defendants and Judge Ott.

Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or
> the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured .
> . . .

42 U.S.C. § 1983.  "A § 1983 action alleging a procedural due process clause

violation requires proof of three elements:  a deprivation of a

constitutionally-protected liberty or property interest; state action; and

---

[2]  While the constitutional right to due process applies in criminal contempt
proceedings, the only requirement is that "the notice must be reasonably calculated
to inform persons of the charges against them and their opportunity for a hearing at
a specific time and place to present their objections."  Hedquist v. Hedquist, 275
Ga. 188, 189 (2002); see also Brown v. King, 266 Ga. 890, 891 (1996) ("To
comport with due process, the notice of the hearing must be reasonable.").  Judge
Ott ruled in the Rule Nisi hearing that Plaintiff had been properly notified, and
Defendants' evidence shows that their attempts at notifying Plaintiff of the hearing
were reasonable.

constitutionally-inadequate process."  Cryder v. Oxendine, 24 F.3d 175, 177 (11th

Cir. 1994).

 The defendants in this case are private parties and are not state entities.  The

Eleventh Circuit has held "private defendants can be held liable in a Section 1983

action if they act in concert with . . . state officials in depriving a plaintiff of

constitutional rights."  Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990).

To establish a prima facie case of a conspiracy to violate rights protected by §

1983, a plaintiff must present evidence that the defendants reached an

understanding to violate his rights.  Id.; see also Harvey v. Harvey, 949 F.2d 1127,

1133 (11th Cir. 1992) ("For purposes of 42 U.S.C. § 1983, the plaintiff must plead

in detail, through reference to material facts, the relationship or nature of the

conspiracy between the state actor(s) and the private persons.").  Where a plaintiff

seeks to establish state action through a conspiracy between private parties and a

judicial officer, allegations that the private parties misused judicial process is not

enough -- the plaintiff must allege the judicial officer actively engaged in a

conspiracy with the private parties.  See Harvey, 949 F.2d at 1133 (holding plaintiff

failed to properly allege state action based on conspiracy between private parties

and state court judge where plaintiff alleged private parties obtained an order based

on false information but did not allege judge was aware of falsity).

Plaintiff has not produced any evidence to support the existence of a conspiracy between Defendants and Judge Ott. Plaintiff offers no evidence of the existence of a conspiracy or any overt actions related to promotion of the conspiracy. In fact, Plaintiff has produced no evidence of any relationship of any kind between the alleged conspirators.[3] Furthermore, Defendant' evidence shows,

_____

[3] The Affidavit of Macklyn A. Smith, former legal counsel of Sun-Pacific, does not provide any facts on which to base a conspiracy or which even suggest there was any agreement between Judge Ott and Defendants. (See Smith Decl., attached to Pl. Resp. to Def. MSJ [94] as Ex. B.) Mr. Smith states that he was Sun-Pacific's counsel in the Newton County Action. He claims that while he was cross-examining Steven Girardot on the alleged promises made by Plaintiff regarding the Adjacent Lot, Judge Ott stopped him, chastised him, and accused him of implying that Mr. Girardot was not telling the truth. (Id. at ¶ 3.) Smith further states that Judge Ott excused the jury, spoke to him harshly for several minutes, and restricted the questions which Smith could use to show Mr. Girardot was not telling the truth. (Id.) Smith also states that Judge Ott ordered him to go to the law library and read certain case law, and that as a result of this mistreatment, Smith was forced to end his cross-examination. (Id.) Smith states that he was intimidated by Judge Ott to the point of affecting his defense of Sun-Pacific, and that he was unable to bring out all the relevant facts pertinent to the case. (Id. at ¶ 4.) Smith also states that he was not in good health at the time. (Id.) Regardless of what transpired between Mr. Smith and Judge Ott during the cross-examination, these facts are entirely insufficient to show either that Judge Ott intended to deprive Plaintiff of his due process rights or that there was a conspiracy between Defendants and Judge Ott to do so. The "conspiracy" is based on rank speculation and conjecture.

without conflicting evidence from Plaintiff, that there was no agreement to conspire with Judge Ott to violate Plaintiff's due process rights.  The Girardots and Defendant McIlhinney state in their affidavits that they have no personal relationship with Judge Ott whatsoever, and Plaintiff's evidence shows no facts to contradict or refute that claim.  (S. McIlhinney Affidavit, attached to Def. MSJ as Ex. B, at ¶ 29; S. Girardot Affidavit, attached to Def. MSJ as Ex. A, at ¶ 18; M. Girardot Affidavit, attached to Def. MSJ as Ex. C, at ¶ 10.)

The evidence further shows that Judge Ott refused to allow the contempt proceedings to be conducted until he was satisfied a proper effort had been made to give Plaintiff notice and that there was a proper record of the effort. Specifically, on November 13, 2002, he continued the Rule Nisi hearing until these requirements were met.  Mr. McIlhinney then sent further notice via regular and certified mail to the two addresses he had for Plaintiff.  Had there been an effort by Judge Ott or the Defendants to deprive Plaintiff of notice, additional notice would not have been required or would not have been sent.  Because Plaintiff has failed to designate specific facts showing an agreement between Judge Ott and Defendants to violate his due process rights, no genuine issue for trial exists on Plaintiff's Section 1983 claim.  Defendant's Motion for Summary Judgement as to Plaintiff's

Section 1983 claim is therefore **GRANTED**.

     2.  <u>Plaintiffs' RICO Claim</u>

     Plaintiff also asserts a claim under the federal and Georgia RICO Acts,

alleging that Defendants committed multiple predicate crimes, including mail and

wire fraud, in depriving Plaintiff of his property in the Newton County Action and

subsequent hearing on the Motion for Contempt.  Section 1962(c) of the federal

RICO Act provides "[i]t shall be unlawful for any person employed by or

associated with any enterprise engaged in, or the activities of which affect, interstate

or foreign commerce, to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity or

collection of unlawful debt."  18 U.S.C. § 1962(c); <u>see also</u> O.C.G.A. § 16-14-4(a);

<u>Huddleston v. R.J. Reynolds Tobacco Co.</u>, 66 F. Supp. 2d 1370, 1375 (N.D.Ga.

1999) ("The Georgia Act is modeled after the federal RICO Act, and the Georgia

courts have frequently relied upon federal case law in interpreting the Act.").  To

prevail on a civil RICO claim under § 1962(c), the plaintiff must show:  (1) the

existence of an enterprise; (2) that the enterprise affected interstate commerce; (3)

that the defendant was employed by or associated with the enterprise; (4) that the

defendant participated, either directly or indirectly, in the conduct of the affairs of

the enterprise; and (5) that the defendant participated through a pattern of racketeering activity.  United States v. Starrett, 55 F.3d 1525, 1541 (11th Cir.1995). Both RICO Acts define the term "pattern of racketeering activity" as requiring the commission of at least two acts defined as predicate racketeering offenses by the respective statutes.  See 18 U.S.C. § 1961(5); O.C.G.A. § 16-14-3(8).

In this case, Plaintiff bases his RICO claims on incidents of alleged perjury in the Newton County Action, as well as mail fraud and wire fraud in connection with the December 2002 hearing and the Contempt Order.  However, Plaintiff is unable to point to any facts to support his allegations.  In response to Court Ordered Interrogatories, Plaintiff listed nine acts which he alleges provide support for his federal and Georgia state RICO claims:

1.)   Statements made by Steven Girardot over the telephone to Plaintiff regarding the sale of the Adjacent Lot after the Girardots purchased Lot 2 and Lot 3.

2.)   Mailing of a letter in 1998 by the Girardot's attorney, Mark Baker, to an attorney of Sun-Pacific, threatening legal action if the Adjacent Lot was sold.

3.)   Formation of the Homeowners Association in 1999 with the purpose

14

of defrauding Sun-Pacific, in order for the Girardots to gain standing

to sue, and the mailing of numerous papers regarding the phony

homeowners association to the court, other homeowners, and entities

for laundering purposes.

4.)     The mailing of a copy of Plaintiff's federal conviction to Sun-Pacific's

attorney by Defendants' attorney,[4] Mark Baker, causing Plaintiff not to

testify in the Newton County Action.

5.)     Alleged perjury committed by Steven Girardot in the Newton County

Action.

6.)     Defendant McIlhinney's commission of mail fraud in using invalid

mailing addresses to send Plaintiff a copy of Defendant's Motion for

Contempt.

7.)     Defendants allegedly arranging for attorney Mark Baker to represent

_____

[4] In 1987, Plaintiff was convicted in the Northern District of Georgia for forging the signature of a district court judge on a court order and two counts of using the forged order to commit mail fraud.  He was sentenced to consecutive five (5) year terms of imprisonment.  (See Indictment, attached to Def. Mot. to Dismiss [10] as Ex. 5.; Sun Decl., attached to Pl. MSJ as Ex. 3, at ¶ 2.)  Plaintiff apparently was on parole until 2001.  (2 Sun Decl., attached to Pl. Opp. to Def. MSJ [94], at ¶ 6.)

the Girardots at the creditors hearing in bankruptcy court to hide the

Newton County Contempt Order from Plaintiff.

8.)      Placing liens on Lots 1 and 15 because the liens were the byproduct of

perjury, mail and wire fraud.

9.)      The Homeowners Association allegedly being founded for a fraudulent

purpose and starting the "laundering process" by inviting others to

join.

(Pl. Resp. to Court Ordered Interrogatories [80], at 2-8.)

Despite this conclusory, speculative conjecture, Plaintiff offers no evidence

to support it.  There is no evidence to support Plaintiff's allegations that

Defendants have committed any crime, such as mail or wire fraud, that would

qualify as a predicate act under RICO.  He fails completely to offer any evidence to

support any of the five required elements of a RICO claim.  Plaintiff fails to show

the existence of an enterprise affecting interstate commerce, that Defendants

participated in the conduct of the affairs of the enterprise, and most importantly,

that Defendants participated through a pattern of racketeering activity.[5]

---

[5] Even if Plaintiff's evidence of Defendants' predicate crimes were
sufficient, his RICO claim fails because he completely neglects to point to facts

For example, Plaintiff points to no facts showing that the Homeowners

Association was formed for fraudulent purposes or that it is a phony organization.

Plaintiff's submitted declaration of James Austin, a homeowner in the Costa Lanier

subdivision, fails to provide any factual basis for a claim that the homeowners

association was formed for fraudulent purposes.  (See Austin Decl., attached to Pl.

Resp. to Def. MSJ [94] as Ex. C.)  In fact, Austin's Declaration states that he does

"not know any details about the association," that he is not a member, and that he

is not involved with any of its activity.  (Id. at ¶ 3.)  He states that "[a]s far as [he]

know[s], most residents in the . . . subdivision are not members of the

---

supporting the other elements of a RICO claim.  "[A] RICO enterprise exists where
a group of persons associates, formally or informally, with the purpose of
conducting illegal activity."  United States v. Hewes, 729 F.2d 1302, 1311 (11th
Cir. 1984).  "[T]he definitive factor in determining the existence of a RICO
enterprise is the existence of an association of individual entities, however loose or
informal, that furnishes a vehicle for the commission of two or more predicate
crimes, that is the pattern of racketeering activity requisite to the RICO violation."
United States v. Goldin Indus., Inc., 219 F.3d 1271, 1275 (11th Cir. 2000).  The
Eleventh Circuit has held that "the existence of an enterprise is proved by evidence
of an ongoing organization, formal or informal, and by evidence that the various
associates function as a continuing unit."  Id.  "The 'enterprise' is not the 'pattern
of racketeering activity'; it is an entity separate and apart from the pattern of activity
in which it engages.  The existence of an enterprise at all times remains a separate
element which must be proved . . . ."  United States. v. Turkette, 452 U.S. 576, 583
(1981).  Plaintiff has designated no facts in response to Defendants' Motion for
Summary Judgment that could support the existence of such an enterprise.

Homeowners Association," but he does not know the exact number of members. (Id. at ¶ 4.)  The facts in the Austin affidavit are woefully inadequate to show any fraudulent activity on the part of the Association, and in fact support Defendants' claim that it was formed for valid purposes, as Austin admits that he was invited to attend a meeting of the Association at one point, but did not attend.  (Id. at ¶ 3.) Plaintiff even submits as evidence the meeting minutes, bylaws, and Articles of Incorporation of the Homeowners Association. These documents indicate the Association was organized for a proper purpose, and they do not even suggest that the organization was created for the fraudulent purposes about which Plaintiff speculates.  (See Homeowners Association Documents, attached to Pl. MSJ as Ex. H.)

There is also no evidence that Defendants purposefully used an out of date mailing address for Plaintiff in mailing the Rule Nisi notice, or that any mail or wire fraud was committed by Defendants.  To the contrary, the evidence shows that Judge Ott required Mr. McIlhinney to take specific steps to notify the Plaintiff. Defendants submit evidence that Mr. McIlhinney's file contained Plaintiff's deposition from a previous case where he gave a Lawrenceville, Georgia address and post office box, and that Mr. McIlhinney used this information in determining

Plaintiff's address.  (Def. SMF, at ¶ 35.)  Defendant also used a private investigator to confirm that Plaintiff still resided at that address.  (<u>Id.</u> at ¶ 36.)

Plaintiff states in his affidavit that, in the latter part of 2002, he was a defendant in a Hall County civil action where Mr. McIlhinney was counsel for the Girardots.  (Sun Decl., attached to Pl. MSJ, at ¶ 4.)  Plaintiff claims that in all the legal papers he filed in that case, he used his correct Savannah address, and thus Defendants should have known to send any notices there.  (<u>Id.</u>)  This, however, is not evidence that Defendants knew the two Lawrenceville addresses they used were incorrect and that Defendants therefore committed mail fraud.  In fact, Plaintiff does not contest that he continued to maintain a residence at the Lawrenceville address, claiming only that he went there only "every month or two."  (<u>Id.</u> at ¶ 5.)  Furthermore, Defendants provide a copy of Plaintiff's Answer in the Hall County Case, a pleading Plaintiff claims provided notice to Defendants of his correct Savannah address.  The certificate of service on the Answer, however, is dated December 23, 2002–after Mr. McIlhinney mailed the Rule Nisi notices to Plaintiff and after the hearing was held.  (Supp. McIlhinney Affidavit, attached to Def. Opp. to Pl. MSJ [93] as Ex. 10, at ¶ 10.)  Plaintiff's RICO claim appears to be based not on the fact that notice was sent to an incorrect address, but that it was not sent to

the address that was most convenient for him.[6]  The only other evidence Plaintiff

provides for his claims are his own conclusory accusations against the Defendants

with no factual basis.  Setting aside Plaintiff's litigating rhetoric, what he really

seeks in this federal action is to challenge the adverse decision in the state court

litigation in which he was involved.  In essence, Plaintiff is attempting to relitigate

the issues already decided in the Newton County Action.

If Plaintiffs' evidence is merely colorable, or is not significantly probative,

summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 249 (1986).  That is, there must be sufficient evidence on which the jury could

reasonably find for the plaintiff.  Id. at 248.  Plaintiffs' evidence of alleged

racketeering activity in violation of RICO substantially fails to meet the standards

necessary to avoid summary judgment on his federal and Georgia state RICO

claim.  Defendant's Motion for Summary Judgment on Plaintiffs' RICO claim is

therefore **GRANTED**.[7]

---

[6]  There is a serious question in the Court's mind whether Plaintiff has
argued the notice should have been sent to his Savannah address knowing
Defendants were not advised of this address until after the Rule Nisi notices were
sent and the hearing was held.

[7]  In Plaintiff's Motion for Summary Judgment, he argues that there is no
genuine issue of material facts to be tried in the case and that Plaintiff is entitled to

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment [88] is **GRANTED** and Defendants' Motion for Extension of Time [90]

is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary

Judgment [91] is **DENIED.**  Plaintiff's Motion to file Belated Statement of Material

Facts [97] is **GRANTED**.

**SO ORDERED** this 31st day of August, 2006.

———————————————

summary judgment as a matter of law on his Section 1983 and RICO claims.
Because Plaintiff's evidence is insufficient to survive Defendant's Motion for
Summary Judgment, Plaintiff's Motion for Summary Judgment on his claims is
**DENIED**.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE